Defendant-appellant, Danny Lee Beddow, appeals from his convictions for theft and burglary in the Montgomery County Court of Common Pleas. Beddow contends that the identification evidence in his case should have been suppressed. Because we find that the evidence was not suggestive, we affirm the judgment of the trial court.
 I.
On July 18, 1996, Danny Lee Beddow was indicted by the Montgomery County Grand Jury on one count of theft of more than $300 against R.C. 2913.02(A)(1). On July 23, he was indicted on a separate count of burglary with a person present against R.C.2911.12(A)(1). Beddow moved to suppress identification testimony in both cases against him. The trial court heard the motions jointly on September 6, 1996 and overruled the motions on September 11. Beddow entered pleas of no contest to both counts on September 26. On October 11, the trial court sentenced Beddow to serve a one-year term on the theft conviction concurrently with a two-year term on his burglary conviction.
Testimony given during the hearing on Beddow's motions established the following facts. On May 5, 1996, a Dayton police officer spotted a blue, hatchback automobile with a gas grill projecting from its open hatch. The officer recorded the license number but did not stop the car. Using that information, the officer found that the car was owned by William Young of Centerville, Ohio.
On May 22, 1996, between 3:00 and 4:00 p.m., Deborah Golden saw two men exit their blue car and jump a fence onto neighboring property owned by Leonard Solinger. The men began to load their car with lumber from the property. Golden confronted the men and asked what they were doing. They replied that they were taking the lumber to where it was needed for a different construction project. Golden was still suspicious. Thus, she asked her brother to write down the license number of the men's car. The license-plate number was eventually matched to that of the car owned by William Young.
Later, on June 6, the Dayton police were called by someone who spotted two men carrying a lawn mower through his yard. Police stopped the men, whom they discovered were Danny Lee Beddow and William Young. Police could not then determine that the lawnmower was stolen; so, they released Young. However, they arrested Beddow against whom there was an outstanding warrant.
Police later discovered the lumber stolen from the Solinger property in the possession of Albert Hennsley. Hennsley testified that he had bought the lumber from Beddow, whom he had known for approximately a year and a half. Hennsley had purchased lumber from Beddow before, he said, without incident.
Detective Mark Salyer, who was investigating the lumber theft, then created two photographic lineups, one using Beddow's picture and the other using Young's picture. Each line-up was generated by a computer. Detective Salyer entered into the computer various hair and facial characteristics for each suspect. The computer then recovered five other photographs of individuals with similar features. The six photographs were arranged automatically onto a single-page layout which was printed in black and white.
Detective Salyer showed the computer-generated lineups to both Golden and Hennsley. He also read them a standardized disclaimer stating, among other things, that the criminal may or may not be pictured in the lineup. Both witnesses identified the photograph of Beddow. After Golden made her identification, Detective Salyer showed her a color photograph of Beddow. Again, she identified the picture as belonging to one of the lumber thieves. Beddow contends on appeal that all of the identification evidence should have been suppressed below.
 II.
Beddow's sole assignment of error is, simply, that:
 The Trial Court Erred When it Failed to Suppress Identification Evidence.
 Beddow argues that the identifications made from the black-and-white photographic layout were inadmissible, as against constitutional due process, because the confrontation procedures utilizing them were unreliable. Specifically, he contends that "it is questionable whether * * * a computer identification photo spread that is black and white is of sufficient detail and clarity to present an accurate identification."
We do not find this argument convincing. First, we note that Ohio courts have found identifications made from black-and-white photographs sufficiently reliable to affirm convictions on numerous occasions. See, e.g., State v. Wogenstahl (1996),75 Ohio St.3d 344, 364, certiorari denied (1996), — U.S. ___,117 S.Ct. 240, 136 L.Ed.2d 169; State v. Butler (1994), 97 Ohio App.3d 322,325-26; State v. Mann (April 28, 1992), Montgomery App. No. 12685, at 4; State v. Broadnax (Dec. 14, 1995), Cuyahoga App. Nos. 67360, 67361, at 3. Although a selection made from color photographs may be a more reliable verification of identity, there is nothing constitutionally impermissible about the use of black-and white photographs.
Second, the computerized system used by the police in this case appears to have avoided most potential unfairness to a criminal suspect from undue suggestiveness. The background of each photograph in the array is identical. The photographs include only the head and some portion of the torsos of each subject. Little can be seen of the clothes each man is wearing. Thus, there was almost nothing extraneous that might have drawn the witnesses' attention unfairly to Beddow's photograph. Moreover, the similarity of features among the photographs is remarkable. All of the subjects appear to be white men, of similar ages, with dark hair, beards and mustaches. The procedure employed by the police in this case seems to have circumvented almost any claim that the lineup was unfairly suggestive.
Indeed, Beddow does not claim that the lineup was suggestive. He claims, instead, that the identification was unreliable because it was based on black-and-white photographs. However, evidence of identification from a photograph will only be set aside if the procedure was impermissibly suggestive. Simmons v. United States
(1968), 390 U.S. 377, 384; see also Neil v. Biggers (1972),409 U.S. 188, 198-99 (holding that an inquiry into the "totality of the circumstances" is required after a confrontation procedure is found unduly suggestive). As this court once explained, "No further inquiry concerning the reliability of identification testimony is called for when there is no basis to conclude that it was the product of an unduly or unnecessarily suggestive confrontation procedure." Mann, supra, at 4. Because the procedures used in this case were not unfairly suggestive, there is no need to further inquire into the reliability of the identifications.
Beddow also objects to the identification evidence involving the single color photograph shown to Deborah Golden after she picked Beddow's photograph from the black-and-white layout. However, once identification has been firmly established through a photographic array, subsequent identification from a single photograph no longer poses a danger of suggestiveness. See Statev. Barker (1978), 53 Ohio St.2d 135, 143, certiorari denied (1978), 439 U.S. 913. Thus, there are no due process grounds for suppressing Golden's identification.
Accordingly, we find no error in the trial court's decision not to suppress the identification evidence against Beddow. Appellant's sole assignment of error is overruled.
The judgment of the trial court is Affirmed.
FAIN, J., and GRADY, J., concur.
Copies mailed to:
George A. Katchmer
Alan D. Gabel
Hon. Dennis Langer